### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | | |
|---|---|---|
| **PETER F. CASEY,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil No. 06-120-P-H** |
| | ) | |
| **FORT DEARBORN LIFE** | ) | |
| **INSURANCE COMPANY,** | ) | |
| | ) | |
| **Defendant** | ) | |

### RECOMMENDED DECISION ON
### CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Peter F. Casey and defendant Fort Dearborn Life Insurance Company ("Fort Dearborn") cross-move for summary judgment in this action brought pursuant to section 1132 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 *et seq.*, challenging Fort Dearborn's denial of Casey's application for long-term disability benefits. *See generally* Complaint and Jury Demand (Docket No. 1); Plaintiff's Motion for Summary Judgment ("Plaintiff's S/J Motion") (Docket No. 11); Fort Dearborn's Cross-Motion for Summary Judgment ("Defendant's S/J Motion") (Docket No. 18).[1] For the reasons that follow, I recommend that the court grant Fort Dearborn's motion for summary judgment and deny that of Casey.

---

[1] Casey neglected to number the pages of his memoranda of law, as is required by Local Rule 7(e). *See generally* Plaintiff's S/J Motion; Plaintiff's Reply to Defendant's Opposition to Summary Judgment Motion ("Plaintiff's S/J Reply") (Docket No. 22); *see also* Loc. R. 7(e). His counsel is reminded to do so in the future.

## I.  Summary Judgment Standards

## A.  Federal Rule of Civil Procedure 56

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93-94 (1st Cir. 2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

"This framework is not altered by the presence of cross-motions for summary judgment." *Cochran v. Quest Software, Inc*., 328 F.3d 1, 6 (1st Cir. 2003). "[T]he court must mull each motion separately, drawing inferences against each movant in turn." *Id*. (citation omitted); *see also, e.g.*, *Wightman v. Springfield Terminal Ry. Co*., 100 F.3d 228, 230 (1st Cir. 1996) ("Cross motions for summary judgment neither alter the basic Rule 56 standard, nor warrant the grant of summary judgment *per se*. Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed. As always, we resolve all factual disputes and any competing, rational inferences in the light most favorable to the [nonmovant].") (citations omitted).

### B.  Local Rule 56

The evidence the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the Local Rules of this District. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id*. The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences.  "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."  Loc. R. 56(e).  In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact."  *Id.*; *see also, e.g., Cosme-Rosado v. Serrano-Rodriguez*, 360 F.3d 42, 45 (1st Cir. 2004) ("We have consistently upheld the enforcement of [Puerto Rico's similar local] rule, noting repeatedly that parties ignore it at their peril and that failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted.") (citations and internal punctuation omitted).

## II.  Factual Context

### A.  Evidentiary Objections

In support of his motion for summary judgment, Casey filed an affidavit he signed under penalties of perjury on November 21, 2006.  *See* Affidavit of Peter F. Casey (Docket No. 13).  He cites to that affidavit in many of his statements of material facts.  *See generally* Plaintiff's Statement of Material Facts in Support of Motion for Summary Judgment ("Plaintiff's SMF") (Docket No. 12). Fort Dearborn objects to consideration of the material contained in the affidavit on the ground that it never was presented to the administrator as part of administrative review and, hence, cannot properly be considered by the reviewing court.  *See* Fort Dearborn's Opposing Statement of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Opposing SMF") (Docket No. 20) ¶¶ 7-12, 16-17.

The parties concur that Fort Dearborn's denial of Casey's claim is reviewable only for determination whether that action was arbitrary, capricious or an abuse of discretion. *See* Plaintiff's S/J Motion at [5]; Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment and in Support of Fort Dearborn's Cross-Motion for Summary Judgment ("Defendant's S/J Opposition") (Docket No. 19) at 8; *see also, e.g., Glista v. Unum Life Ins. Co. of Am.*, 378 F.3d 113, 125 (1st Cir. 2004) ("Where, as here, a plan administrator has discretion to determine eligibility for and entitlement to benefits, the district court must uphold the administrator's decision unless it is arbitrary, capricious, or an abuse of discretion.") (citation and internal quotation marks omitted). "The ordinary rule is that review for arbitrariness is on the record made before the entity being reviewed." *Liston v. Unum Corp. Officer Severance Plan*, 330 F.3d 19, 23 (1st Cir. 2003). While the First Circuit has declined to adopt an "ironclad rule" against discovery of extra-record evidence in such cases, it has cautioned: "Still, at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." *Id*.; *see also, e.g., Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 982 (7th Cir. 1999) (allowing that, even pursuant to deferential arbitrary-and-capricious standard of review, "discovery may be appropriate to investigate a claim that the plan's administrator did not do what it said it did – that, for example, the application was thrown in the trash rather than evaluated on the merits. But when there can be no doubt that the application was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits[.]"). Casey offers no reason – let alone good reason – for his belated proffer of evidence. *See generally* Plaintiff's S/J Motion; Plaintiff's S/J Reply. Accordingly, Fort Dearborn's objections to consideration of this material are sustained. I set forth only such portions of Casey's statements of material facts as are supported by citations to the underlying administrative record ("Record") once citations to his affidavit are set aside.

A second threshold evidentiary issue remains. Casey objects to Fort Dearborn's entire statement of additional facts on the ground that it is not "short and concise," as required by Local Rule 56(c), inasmuch as (i) Fort Dearborn sets forth sixty-three additional paragraphs, and (ii) many of those track over facts Casey had already set forth in his statement of material facts. *See* Plaintiff's Reply Statement of Material Facts ("Plaintiff's Reply SMF") (Docket No. 23) at [1]. The objection is overruled. Assuming *arguendo* that there is an outer bounds on the sheer number of statements a litigant may offer without running afoul of the shortness and conciseness requirements of Local Rule 56(c), the proffer of sixty-three statements does not come within striking distance of that outer edge – at least not when, as here, each of those statements is in itself short and concise. Further, while Fort Dearborn's facts do track over those of Casey to some extent, Fort Dearborn's version tends to be more detailed and differently nuanced than that of Casey. Its additional facts cannot fairly be characterized as simply redundant of those set forth by its adversary.

**B. Cognizable Facts**

Taking into account the foregoing resolution of evidentiary issues, the parties' statements of material facts, credited to the extent either admitted or supported by record citations in accordance with Local Rule 56, reveal the following relevant to this recommended decision:[2]

Casey began work for Sabre Yachts in South Casco, Maine on October 11, 2004. Plaintiff's SMF ¶ 1; Defendant's Opposing SMF ¶ 1. He enrolled in a long-term disability program offered by his employer ("Plan") effective January 1, 2005. *Id*. ¶ 2. The Plan is administered by Fort Dearborn. *Id*. ¶ 3. The Plan grants Fort Dearborn discretionary authority over the Plan, including the power to interpret it. Additional Material Facts in Opposition to the Plaintiff's Motion for Summary Judgment

---

[2] Inasmuch as the parties' sets of statements of material facts to some extent cover the same ground, I have melded the two for purposes of setting forth the evidence cognizable on summary judgment.

("Defendant's Additional SMF"), commencing at page 6 of Defendant's Opposing SMF, ¶ 34; Plaintiff's Reply Statement of Material Facts ("Plaintiff's Reply SMF") (Docket No. 23) ¶ 34.[3]

Casey had a longstanding medical history of ulcerative colitis (a chronic infection of the large intestine), which required him to undergo a total abdominal colectomy (removal of the large intestine) in or about 1980. *Id.* ¶ 44. As part of Casey's treatment, he was provided with a permanent ileostomy, or ostomy, a surgical procedure in which, after the colon, rectum and anus have been removed, the end of the small intestine is attached and brought out through the abdominal wall to bypass the now-missing large intestine and allow drainage of intestinal waste out of the body. *Id.* ¶ 45. Casey received a stoma – an opening in his abdominal wall to allow this waste to exit his body. *Id.* ¶ 46.[4] Originally, Casey's ileostomy and stoma sat on the right side of his abdomen, but he developed a hernia at that initial site, and in July 2003 his surgeon, Dr. MacGillivray, relocated them to his lower left abdomen. *Id.* ¶ 47. In October 2003 Dr. MacGillivray diagnosed Casey with a probable hernia at the new ileostomy site, which Dr. MacGillivray advised Casey would require repair. *Id.* ¶ 48. Casey requested a delay in treatment, and Dr. MacGillivray advised him to follow up in six months, or sooner as needed. *Id.* ¶ 49.[5]

During 2004 Casey was seen on several occasions by his regular health-care provider, family nurse practitioner ("FNP") Maureen Harpell, at Naples Family Practice. Plaintiff's SMF ¶ 8; Defendant's Opposing SMF ¶ 8. She followed him for a number of problems, including back pain, anxiety, depression and a possible urinary-tract infection. *Id.*[6] On January 28, 2004 Casey saw

---

[3] My recitation incorporates Casey's qualification.

[4] My recitation incorporates Casey's qualification.

[5] Casey qualifies this statement, asserting that Dr. MacGillivray indicated it was appropriate to defer treatment of the hernia "so long as it does not become larger or cause any further problems." Plaintiff's Reply SMF ¶ 49; Record at 72.

[6] Fort Dearborn qualifies this statement, asserting that Casey received a prescription for three months of ostomy supplies from Harpell on September 23, 2004. *See* Defendant's Opposing SMF ¶ 8; Record at 30, 333, 434-35.

Harpell with a complaint of fever, chills and right flank pain and a history of renal colic. *Id*. ¶ 14.[7]
Harpell ordered a number of diagnostic laboratory tests and directed that "a CT scan be obtained
today ruling out any obstructing stone." *Id*. On February 3, 2004 Harpell discussed the results of the
CT scan with Dr. Wright "with regard to [Casey's] persistent fever." *Id*. ¶ 15. It was decided to
repeat the previously done lab work and to obtain an additional abdominal CT scan with contrast "to
evaluate his fever of unknown origin." *Id*. On both CT scans, the presence of a hernia at the ileostomy
site was incidentally noted. *Id*.[8]

Insurance billing records submitted for Casey's medical treatment and the CT scan of January
28, 2004 contain five diagnosis codes 553.20, for "Ventral Hernia Nos," as well as diagnosis codes
for "Abdominal Pain, Unspecified Si," "Pyrexia Of Unknown Origin" and "Other general symptoms."
Defendant's Additional SMF ¶ 54; Plaintiff's Reply SMF ¶ 54; *see also* Record at 293-94.[9] Insurance
billing records submitted for Casey's medical treatment and CT scan on February 4, 2004 again
contain diagnosis code 553.20 for "Ventral Hernia Nos" as well as diagnosis codes for "Other
Diseases of Spleen," "Other Chronic Nonalcoholic Liv[er]" and "Other Specified Disorders of
K[idney]." Defendant's Additional SMF ¶ 57; Plaintiff's Reply SMF ¶ 57; *see also* Record at 317.[10]

During a September 23, 2004 visit with Harpell, Casey requested a note verifying that he
needed ostomy supplies, and Harpell provided it. Plaintiff's SMF ¶ 11; Defendant's Opposing SMF ¶
11.[11] During that visit, Casey consulted Harpell on a number of problems unrelated to his ileostomy.
*Id*. Ostomy supplies are available over the counter and do not require a prescription. *Id*. ¶ 9.

---

[7] Fort Dearborn qualifies this statement, asserting that Casey presented to Harpell with a chief complaint of abdominal pain. *See* Defendant's Opposing SMF ¶ 14; Record at 443.

[8] Fort Dearborn qualifies this statement, asserting that both CT scans concluded Casey had a hernia, with small bowel loops present in his subcutaneous tissue. *See* Defendant's Opposing SMF ¶ 15; Record at 166, 215.

[9] My recitation incorporates Casey's qualification.

[10] My recitation reflects Casey's qualification.

[11] Fort Dearborn qualifies this statement, asserting that Casey received a prescription for ostomy supplies for insurance purposes. *See* Defendant's Opposing SMF ¶ 11; Record at 30, 333, 359, 434.

The only other providers who saw Casey during 2004 were Dr. Meredith, a podiatrist who examined him on referral from Harpell for a complaint of heel pain and diagnosed plantar fascitis, and Dr. Collins, who saw Casey at the Bridgton Hospital Emergency Room for a complaint of fever and diagnosed a urinary tract infection and dehydration. *Id*. ¶ 13.[12]

Casey consulted with Dr. MacGillivray for his peristomal-hernia problem on April 6, 2005. *Id*. ¶ 17.  Dr. MacGillivray stated in a letter to Sabre Yachts dated April 6, 2005 that the hernia "protrudes and becomes symptomatic when [Casey] is involved in strenuous activity and heavy lifting," adding: "Mr. Casey told me that he did not think he could continue to do the strenuous activity at his current job while his hernia persists." *Id*.; Defendant's Additional SMF ¶ 38; Plaintiff's Reply SMF ¶ 38.

On April 6, 2005 Casey submitted a claim form seeking benefits under the Plan.  Defendant's Additional SMF ¶ 35; Plaintiff's Reply SMF ¶ 35.  Casey indicated on the claim form that (i) he was disabled by a parastomal hernia, (ii) his disability began on April 6, 2005, and (iii) his last date worked was April 1, 2005.  *Id*. ¶ 36.  Casey also disclosed that he suffered from the same or similar illness (parastomal hernia) from approximately 2002 to 2003, although he was unsure of the dates. *Id.* ¶ 37.

The Plan contains an exclusion for disability due to a preexisting condition that provides, in relevant part:

> This policy will not cover any disability:
>
> 1.     which is caused or contributed to or by, or results from a pre-existing condition; and

---

[12] Fort Dearborn admits this statement but purports to qualify it with a statement that contradicts it.  *See* Defendant's Opposing SMF ¶ 13.  I omit that proffered qualification, which is in any event immaterial.

2.　　　which begins in the first 24 months after the employee's effective date, unless the employee received no treatment of the condition for 6 consecutive months after his effective date.

***

"Treatment" means consultation, care or services provided by a Physician including diagnostic measures and taking prescribed drugs and medications.

"Pre-existing Condition" means a Sickness or Injury for which the Insured received treatment within 12 months prior to the Insured's effective date.

Plaintiff's SMF ¶ 23; Defendant's Opposing SMF ¶ 23; *see also* Defendant's Additional SMF ¶ 30; Plaintiff's Reply SMF ¶ 30.  The Plan's definition of "totally disabled" or "total disability" requires that the insured be "unable to perform the Material and Substantial Duties of the Insured's Regular Occupation because of a disability."  Plaintiff's SMF ¶ 24; Defendant's Opposing SMF ¶ 24.

Casey's claimed date of disability, April 2005, fell within the first six months of his effective date as a participant in the Plan, January 1, 2005.  Defendant's Additional SMF ¶ 42; Plaintiff's Reply SMF ¶ 42.  Accordingly, Fort Dearborn reviewed the claim to determine whether Casey had received some treatment for a preexisting condition (as defined by the Plan) during the twelve months prior to the effective date, or from January 1, 2004 through January 1, 2005 ("Exclusionary Period").  *Id*. ¶ 43.[13]

Dr. MacGillivray filled out the Attending Physician Certificate portion of a Fort Dearborn disability claim form on April 25, 2005, stating: "Patient was or will be continuously disabled (unable to work) from  4/6/05  to  undetermined."  Plaintiff's SMF ¶ 19; Defendant's Reply SMF ¶ 19. Dr. MacGillivray noted that Casey's diagnosis was a "ventral hernia" and that Casey had first contacted him for this condition in October 2003.  Defendant's Additional SMF ¶ 39; Plaintiff's Reply SMF ¶ 39.  In another disability certificate executed in August 2005 Dr. MacGillivray answered "Yes" to the

---

[13] My recitation incorporates Casey's qualification.

10

question, "Is the patient now totally disabled?"  Plaintiff's SMF ¶ 20; Defendant's Opposing SMF ¶ 20.  Dr. MacGillivray indicated that the only duty of Casey's employment that he could not perform was "heavy lifting."  Defendant's Additional SMF ¶ 40; Plaintiff's Reply SMF ¶ 40.[14]

Fort Dearborn initially denied Casey's application for long-term disability benefits on the ground that the disabling condition of his peristomal hernia was a preexisting condition as defined by the Plan.  Plaintiff's SMF ¶ 25; Defendant's Opposing SMF ¶ 25.  Specifically, Fort Dearborn determined that during the Exclusionary Period Casey consulted with Harpell, at which time he requested and received a prescription for ostomy supplies, which were subsequently dispensed by his pharmacy.  Defendant's Additional SMF ¶ 62; Plaintiff's Reply SMF ¶ 62.[15]  Fort Dearborn concluded that Casey's consultation with a medical-care provider, Harpell, for and his later receipt of ostomy supplies constituted "treatment" of his ileostomy during the Exclusionary Period.  Id. ¶ 63.[16]  Fort Dearborn concluded that because an ileostomy causes, contributes or results in a parastomal hernia, Casey's condition was preexisting.  Id. ¶ 64.[17]

On or about April 26, 2006 Casey appealed from the denial of benefits without submitting any additional medical evidence.  Id. ¶ 66.  He conceded on April 26, 2006 that his "pre-existing ostomy condition contributed to the development of the hernia and, thus, to his disability."  Id. ¶ 67.  He argued only that his consultation with Harpell on September 23, 2004 for a prescription for ostomy supplies and subsequent purchase of those supplies on November 29, 2004 did not constitute

---

[14] Casey qualifies this statement, asserting that in the same statement, Dr. MacGillivray gave Casey only a "sedentary" work capacity. See Plaintiff's Reply SMF ¶ 40; Record at 494.

[15] Casey purports to qualify this statement, admitting that this was the reason given but denying that it was supported by substantial evidence.  See Plaintiff's Reply SMF ¶ 62.  This is in the nature of a legal argument rather than a factual qualification and is on that basis disregarded.

[16] Casey purports to qualify this statement, admitting that this was the reason given but denying that it was supported by substantial evidence.  See Plaintiff's Reply SMF ¶ 63.  This is in the nature of a legal argument rather than a factual qualification and is on that basis disregarded.

[17] Casey purports to qualify this statement, admitting that his claim was denied and his hernia was caused by a preexisting condition but arguing that it is clear these facts alone are not sufficient to sustain a denial given the Plan's definition of preexisting condition.  See (continued on next page)

"treatment" under the terms of the Plan. *Id*. ¶ 68.[18]  While concluding in his April 26, 2006 appeal

letter that "there is no evidence that FNP Harpell examined Mr. Casey's ostomy site or provided any

other treatment or services to care for [the ostomy]," Casey declined Fort Dearborn's invitation to

submit additional information to support his appeal. *Id*. ¶ 69.[19]  For example, Casey never provided

Fort Dearborn with a statement from FNP Harpell disputing the provision of any treatment of his

ostomy – i.e., consultation, care or services, including diagnostic measures or prescribed drugs or

medications. *Id*. ¶ 70.[20]

When Fort Dearborn received Casey's April 26, 2006 appeal, it undertook a medical file

review of his claim for benefits. *Id*. ¶ 71.[21]  Specifically, Thomas A. Reeder, M.D., reviewed all of

the evidence submitted by Casey on his claim and all of the medical records obtained from his

medical-care providers to determine if his parastomal hernia was a preexisting condition under the

terms of the Plan.  Defendant's Additional SMF ¶ 72; Record at 45-53.  Dr. Reeder concluded that

Casey's parastomal hernia was a preexisting condition.  Defendant's Additional SMF ¶ 73; Plaintiff's

Reply SMF ¶ 73.  His conclusion was based on (i) Casey's prior October 2003 treatment with Dr.

MacGillivray for the same hernia, (ii) Casey's consultation with Harpell in September 2004 for a

prescription for ostomy supplies, (iii) the dispensing of those medical goods in November 2004 for

the care of Casey's ileostomy as documented by insurance billing records and pharmacy records, (iv)

evidence of Casey's parastomal hernia as documented by abdominal CT scan, and (v) Dr. Reeder's

---

Plaintiff's Reply SMF ¶ 64.  This is in the nature of a legal argument rather than a factual qualification and is on that basis disregarded.

[18] Casey qualifies this statement, asserting that the provision of the note for ostomy supplies was the only ground raised to deny the claim.  *See* Plaintiff's Reply SMF ¶ 68; Record at 95-97.

[19] Casey qualifies this statement, asserting that Fort Dearborn's medical examiner, Dr. Reeder, obtained further information from Harpell on May 18, 2006, and that she told Dr. Reeder only that she "noted" the presence of the hernia, with no indication she provided treatment for it.  *See* Plaintiff's Reply SMF ¶ 69; Record at 43, 50.

[20] Casey purports to qualify this statement, asserting it was unnecessary for him to provide such information inasmuch as Dr. Reeder obtained it directly from Harpell.  *See* Plaintiff's Reply SMF ¶ 70.  This is in the nature of a legal argument rather than a factual qualification.  In any event, I fail to see how Casey's judgment of the necessity of submission of additional information in April 2006 could have been influenced by an event that had yet to occur.  The proffered qualification is on those bases disregarded.

determination that if Casey had not had an ileostomy, he would not have developed the parastomal hernia, and thus the ileostomy caused the hernia. *Id.* ¶ 74.[22]  Additionally, Dr. Reeder questioned whether Casey was disabled, stating it was "not clear what was impairing about the Plaintiff's parastomal hernia." *Id.* ¶ 75.

Dr. Reeder noted that Casey's medical records indicated the presence of the parastomal hernia as early as October 2003, yet Casey worked for more than two years with that condition. *Id.* ¶ 76.[23] Dr. Reeder stated that an April 2005 abdominal CT scan revealed the same objective findings as those reported on an abdominal CT scan obtained during February 4, 2004.  Defendant's Additional SMF ¶ 77; Record at 50.[24]  Dr. Reeder observed that Casey appeared to have left work at Sabre Yachts because of an altercation with a co-worker.  Defendant's Additional SMF ¶ 78; Plaintiff's Reply SMF ¶ 78.[25]  Dr. Reeder noted that, according to Casey's March 31, 2005 office visit with Harpell, Casey had no intention of returning to his job. *Id.* ¶ 79.  In fact, Casey informed Harpell on March 31, 2005 that he "made the decision that he [did] not intend to go back to [Sabre Yachts] as he [found] it too stressful." *Id.* ¶ 80.[26]  Harpell gave Casey a note for "no work for the next seven days due to his ongoing anxiety and difficulty working," but noted that she did not have time during the March 31,

---

[21] My recitation incorporates Casey's qualification.

[22] Casey purports to qualify this statement, admitting that while the Record reference shows Dr. Reeder's conclusions, it also demonstrates their incorrectness.  *See* Plaintiff's Reply SMF ¶ 74.  This is in the nature of a legal argument rather than a factual qualification and is on that basis disregarded.

[23] Casey purports to qualify this statement, asserting that his condition clearly had changed from 2003 to April 2005, at which time Dr. MacGillivray "felt that [Casey] was totally disabled from working due to the hernia." Plaintiff's Reply SMF ¶ 76.  Casey's statement is not fairly supported by the citation given, which reflects that Dr. MacGillivray relayed Casey's belief that he could not continue in his job while his hernia persisted, *see* Record at 480, and is on that basis disregarded.

[24] Casey denies that the objective findings were the same, *see* Plaintiff's Reply SMF ¶ 77, asserting that the February 4, 2004 CT scan revealed "a left anterior abdominal hernia containing small bowel[,]" Record at 215, whereas the April 2, 2005 CT scan was noted to show the presence of "a large ventral hernia containing small bowel in the area of the ostomy[,]" *id.* at 137.

[25] Casey admits that Dr. Reeder made this statement but disputes its accuracy, noting that the underlying Record reference is worded: "[Casey] states that most recently at work he had a blow up with another coworker and was asked to take a three-day leave." Plaintiff's Reply SMF ¶ 78; Record at 430.

[26] Casey purports to qualify this statement, asserting that, in addition, he was unable to perform the physical requirements of his job. *See* Plaintiff's Reply SMF ¶ 80.  However, the Record citations given support, at most, the proposition that Casey told Dr. MacGillivray he was unable to do his job. *See* Record at 387, 478.  The qualification therefore is disregarded.

2005 visit to complete a disability form with Casey. *Id*. ¶ 81. Dr. Reeder spoke with Harpell on or about May 18, 2005. *Id*. ¶ 82. Harpell informed Dr. Reeder at that time that she was well aware of Casey's parastomal hernia and had been since October 2003 because it was obvious and could be seen protruding underneath Casey's clothes. *Id*. ¶ 83. Harpell advised Dr. Reeder that Casey had not complained about his hernia. *Id*. ¶ 84.[27]

In reaching the conclusion that Casey's parastomal hernia did not provide convincing evidence of an impairing condition, Dr. Reeder also considered (i) Dr. MacGillivray's statement that Casey told him "that [Casey] did not think that he could continue to do the strenuous activity at his current job while his hernia persists" and (ii) Dr. MacGillivray's later opinion that Casey was incapable of performing "heavy lifting" at work. *Id*. ¶ 85.[28] Dr. Reeder did not find any convincing evidence that Casey suffered from an impairing condition as of April 2005. *Id*. ¶ 86.[29] Dr. MacGillivray had not provided any detailed information regarding the specific functions of Casey's job he was unable to perform in April 2005 as a result of his parastomal hernia. *Id*. ¶ 87.[30]

On the basis of the evidence in Casey's claim file and upon the additional recommendations after Dr. Reeder's medical-file review, Fort Dearborn considered Casey's appeal on June 22, 2006 and upheld the prior determination to deny Casey benefits under the Plan on grounds that (i) Casey's

---

[27] Casey purports to qualify this statement, asserting that it is not clear from the Record references whether Harpell was referring to not receiving complaints during the entire time she treated him or only at or near the time she spoke with Dr. Reeder. *See* Plaintiff's Reply SMF ¶ 84. This is in the nature of a legal argument rather than a factual qualification. In any event, it is reasonably clear that Harpell referred to a lack of complaints during the entire time she had treated Casey. *See* Record at 43-44. The proffered qualification is on those bases disregarded.

[28] Casey purports to qualify this statement, asserting that to reach that conclusion, Dr. Reeder had to ignore Dr. MacGillivray's statements that Casey was totally disabled. *See* Plaintiff's Reply SMF ¶ 85. This is in the nature of a legal argument rather than a factual qualification and is on that basis disregarded.

[29] Casey purports to qualify this statement, asserting that Dr. Reeder's failure to find such convincing evidence resulted from willful disregard of the evidence before him. *See* Plaintiff's Reply SMF ¶ 86. This is in the nature of a legal argument rather than a factual qualification and is on that basis disregarded.

[30] I omit Fort Dearborn's further statement that "a Physical Requirements Form submitted by Sabre Yachts for Plaintiff's position of boat builder did not indicate that 'heavy lifting' was a Material and Substantial duty of the Plaintiff's job." Defendant's Additional SMF ¶ 88. The statement, which Casey denies, *see* Plaintiff's Reply SMF ¶ 88, is not supported by the citation given, which states (contradictorily) that Casey was required to lift for two *percent* of the time required in an average eight-hour day and to lift fifty pounds (*continued on next page*)

disability due to a parastomal hernia was caused by his ileostomy, which was a preexisting condition under the terms of the Plan, and (ii) it was unclear exactly what was impairing about Casey's condition of parastomal hernia that would prevent him from performing the material and substantial duties of his occupation as of the time he stopped working in April 2005 had his condition not been determined to be preexisting.  *Id*. ¶ 89.[31]  Casey filed suit against Fort Dearborn on or about July 18, 2006, pursuant to 29 U.S.C. § 1132, to recover benefits under the Plan that had been denied.  *Id*. ¶ 90.

### III.  Analysis

Casey concedes that (i) the Plan accorded Fort Dearborn discretion to determine his eligibility for benefits and to interpret the Plan's terms, and (ii) this court's review accordingly is confined to determining whether Fort Dearborn's decision was arbitrary, capricious or constituted an abuse of discretion.  *See* Plaintiff's S/J Motion at [5].  In such circumstances, an insurer's decision "must be upheld if it is reasoned and supported by substantial evidence."  *Gannon v. Metropolitan Life Ins. Co*., 360 F.3d 211, 212-13 (1st Cir. 2004).  "Substantial evidence," in turn "requires more than a scintilla of evidence but less than a preponderance of the evidence to support a conclusion[.]"  *Kennard v. Unum Life Ins. Co*., 211 F.Supp.2d 206, 221 (D. Me. 2002) (citation omitted); *see also, e.g., Doyle v. Paul Revere Life Ins. Co*., 144 F.3d 181, 184 (1st Cir. 1998) (substantial-evidence standard requires only "evidence reasonably sufficient to support a conclusion").  While an insurer "can give conflicting opinions different weight, it cannot reinvent the evidence before it."  *Kennard*, 211 F. Supp.2d at 221.

---

up to two *hours* a day, and does not address whether lifting is a material and substantial duty of the job, *see* Record at 387.
[31] Casey purports to qualify this statement, denying that this conclusion was supported by substantial evidence.  See Plaintiff's Reply SMF ¶ 89.  This is in the nature of a legal argument rather than a factual qualification and is on that basis disregarded.

Fort Dearborn ultimately denied Casey's request for long-term disability benefits on grounds that (i) the hernia condition was "preexisting" because he received treatment for his ostomy during the Exclusionary Period in the form of Harpell's prescription for ostomy supplies, (ii) the hernia condition was "preexisting" because he received treatment for that condition during the Exclusionary Period in the form of CT scans diagnosing it, and (iii) it was not clear what was impairing about his hernia (and thus he had not proven total disability). *See* Record at 22-25. Casey contends that none of these grounds is supported by substantial evidence of record; Fort Dearborn rejoins that all three are. *See* Plaintiff's S/J Motion at [5]; Defendant's S/J Opposition at 9-15. I agree that Fort Dearborn's second basis for denial of Casey's claim is unsupported by substantial evidence; however, the first and third pass muster. Inasmuch as the sustainability of even one of Fort Dearborn's three grounds for denial is fatal to Casey's ERISA challenge, I recommend that the court grant Fort Dearborn's motion for summary judgment and deny that of Casey.

## A.  Treatment in Form of Prescription for Supplies

The Plan excludes coverage for any disability that is "caused or contributed to or by, or results from a pre-existing condition[.]" Plaintiff's SMF ¶ 23; Defendant's Opposing SMF ¶ 23. A "preexisting condition," in turn, is defined as "a Sickness or Injury for which the Insured received treatment" during the Exclusionary Period. *Id*. "Treatment," finally, is defined as "consultation, care or services provided by a Physician including diagnostic measures and taking prescribed drugs and medications." *Id*.

Fort Dearborn denied Casey's claim in part on the ground that Casey received "treatment" for his ileostomy during the Exclusionary Period in the form of a prescription for ostomy supplies from Harpell – which he used to obtain such supplies – and that the ileostomy caused or contributed to the hernia Casey claims is disabling. *See* Defendant's S/J Opposition at 10-11. Casey admits that

Harpell qualifies as a "Physician" pursuant to the Plan's language and that the ileostomy caused or contributed to the hernia. *See* Plaintiff's S/J Motion at [6] n.2 & [7]; *see also* Defendant's Additional SMF ¶ 67; Plaintiff's Reply SMF ¶ 67. However, he contests that Harpell provided "treatment" for the ileostomy. *See* Plaintiff's S/J Motion at [6]. Specifically, he argues that:

1. Ostomy supplies are not prescribed drugs or medicines inasmuch as they are available without a prescription and are neither drugs nor medicines. *See id*.

2. His use of supplies for self-care of his ostomy does not meet the Plan's definition of treatment inasmuch as it is not "care, consultation or services provided by a *Physician*." *See id*. (emphasis in original).

3. Harpell's "ministerial act of writing a note to allow [Casey] to continue to purchase self-care supplies for his ostomy cannot reasonably be characterized as 'care' or 'services' provided by a physician." *Id*. at [7].

4. Harpell's provision of a note to Casey so that he could continue to purchase ostomy supplies at the Medicine Shoppe cannot reasonably be characterized as a "consultation." *See id*.

Casey does not contest that, during the Exclusionary Period, he sought a "note" from Harpell verifying his need for ostomy supplies at the request of a new pharmacy in order that he might receive insurance coverage for them. *See* Plaintiff's S/J Motion at [4]; Plaintiff's S/J Reply at [3]. Nor does he contest that the "note" was written on a prescription blank. *See* Plaintiff's S/J Motion at [4]. While he now points to evidence of record that ostomy supplies are non-prescription, *see* Plaintiff's SMF ¶ 9; Record at 357, 386, and contests that Harpell wrote a "prescription" for them, he himself, during the administrative-review process, characterized her as having written such a "prescription," *see, e.g.*, Defendant's Additional SMF ¶ 68; Record at 89; Defendant's Opposing SMF ¶ 11; Record at 30. In addition, during the administrative-review process, he declined an opportunity to submit further

evidence that might have strengthened his position, such as a letter from Harpell explaining that, despite appearances to the contrary, what she wrote was not a "prescription." *See, e.g.*, Defendant's Additional SMF ¶¶ 69-70; Plaintiff's Reply SMF ¶¶ 69-70.

Regardless whether Casey could have obtained his ostomy supplies without a prescription (or even a "note") had he been willing to bypass his insurer and pay for them in full, he chose during the Exclusionary Period to seek from Harpell, and she provided, what Fort Dearborn supportably concluded based on the record before it (including Dr. Reeder's comments and Casey's own characterization) was a "prescription." Further, Fort Dearborn rationally concluded that ostomy supplies qualified as "drugs" or "medications." As Fort Dearborn correctly points out, *see* Defendant's S/J Opposition at 11, the definition of "drugs" is quite broad; a "drug" is defined, *inter alia*, as a "[t]herapeutic agent; any substance, other than food, used in the prevention, diagnosis, alleviation, treatment, or cure of disease." Stedman's Med. Dictionary 542 (27th ed. 2000); *see also, e.g.*, Webster's Third New Int'l Dictionary 695 (1981) (defining a "drug," *inter alia*, as "a substance intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animal" and "a substance other than food intended to affect the structure or function of the body of man or other animal"). Ostomy supplies, which are used in care and maintenance of an ileostomy, rationally can be viewed as part and parcel of treatment, and/or alleviation or mitigation, of the disease of ulcerative colitis.

For the foregoing reasons, Fort Dearborn's denial of Casey's claim on the ground that Harpell provided "treatment" for Casey's ileostomy during the Exclusionary Period in the form of a prescription for drugs or medications (ostomy supplies) was reasoned and supported by substantial evidence. No more is required for the decision to pass muster pursuant to the applicable standard of review.

18

### B. Treatment in Form of Diagnostic Findings

Fort Dearborn next argues that it supportably determined that Casey received treatment for his parastomal hernia during the Exclusionary Period in the form of CT scans that specifically noted and diagnosed the hernia. *See* Defendant's S/J Opposition at 11-12. The Plan defines a "Pre-existing Condition" as "a Sickness or Injury *for which* the Insured received treatment" during the Exclusionary Period in the form, *inter alia*, of "diagnostic measures." Plaintiff's SMF ¶ 23; Defendant's Opposing SMF ¶ 23 (emphasis added). "[S]traightforward language in an ERISA-regulated insurance policy should be given its natural meaning." *Hughes v. Boston Mut. Life Ins. Co.*, 26 F.3d 264, 268 (1st Cir. 1994) (citation and internal quotation marks omitted). As Casey suggests, "The plain language of the policy . . . logically requires that the purpose of the disqualifying treatment be related to the sickness or injury constituting the pre-existing condition." Plaintiff's S/J Motion at [7]; *see also, e.g., Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 409, 411-12 (7th Cir. 1996) (refusing to apply exclusion of condition "for which [an insured] . . . received treatment or service" to insured's breast cancer when she "did *not* receive a 'treatment or service' *for* breast cancer" but rather for an unrelated breast condition) (emphasis in original); *Giroux v. Fortis Benefits Ins. Co.*, 353 F. Supp.2d 45, 50-53 (D. Me. 2005) (insurer arbitrarily determined insured's motor neuropathy to be a condition for which he had received physician consultation when insurer and its medical reviewer ignored physician's letters explaining that he had merely incidentally noted motor neuropathy during the course of a consultation with insured for an unrelated condition).[32]

---

[32] Fort Dearborn cites *Chandler v. John Alden Life Ins. Co.*, No. Civ.03-521-JD, 2005 WL 165389 (D.N.H. Jan. 26, 2005), for the proposition that diagnostic measures can satisfy the definition of "treatment" even in the absence of actual treatment. *See* Defendant's S/J Opposition at 12; *Chandler*, 2005 WL 165389, at *4-*5. Its reliance on *Chandler* is misplaced. Casey does not contest that diagnostic measures can constitute "treatment" pursuant to the Plan; rather, he disputes that the hernia was a sickness or injury "for which" he received treatment. *See* Plaintiff's S/J Motion at [7]-[8]. Tellingly, the insurer in *Chandler* did not base its claim denial on the clause in its policy excluding coverage for conditions "for which the covered person received medical treatment or advice" during the exclusionary period; rather, it invoked an alternate clause excluding coverage for conditions that "produced signs or symptoms" that "should have caused an ordinarily prudent person to seek *diagnosis or treatment*." *Chandler*, 2005 WL 165389, at

(*continued on next page*)

19

Harpell ordered a CT scan on January 28, 2004 to rule out the presence of an obstructing stone. While she ordered a second abdominal CT scan on February 3, 2004 to evaluate Casey's fever of "unknown origin," she did not need a CT scan to diagnose the hernia, which protruded from beneath Casey's clothes and had been obvious to her since October 2003. Fort Dearborn points to no evidence indicating that the hernia was in fact the cause of Casey's troubling symptoms or was even suspected to be a possible cause by Harpell or any other health-care provider. In the circumstances, Fort Dearborn's conclusion that the hernia was a sickness or injury for which Casey received treatment (in the form of the two CT scans) is unsupported by substantial evidence.[33]

### C. Total Disability

Fort Dearborn finally argues that its denial of Casey's long-term disability claim on the basis that he had not proven total disability was neither arbitrary, capricious nor an abuse of discretion. *See* Defendant's S/J Opposition at 13-15. I agree. Pursuant to the Plan, an insured is "totally disabled" if he or she is "unable to perform the Material and Substantial Duties of the Insured's Regular Occupation because of a disability." Plaintiff's SMF ¶ 24; Defendant's Opposing SMF ¶ 24. Casey's treating physician, Dr. MacGillivray, twice stated (in April 2005 and August 2005) that Casey was totally disabled. Nonetheless, with the benefit of the views of its reviewing physician, Dr. Reeder, Fort Dearborn supportably chose not to credit that opinion, and to find that Casey had not proven his case of total disability, on grounds that:

---

*1, *3 (emphasis added).

[33] While the physician who evaluated the CT scans noted the presence of the hernia, and a hernia was among the health-care conditions for which diagnosis codes were supplied in submitting bills for the CT scans to Casey's insurer, Casey correctly characterizes these findings as "incidental" given the complete lack of evidence that the known hernia condition had anything to do with either the ordering of the CT scans or the illness on account of which the scans were ordered. *See* Plaintiff's S/J Motion at [7].

1.      Casey had managed to work for months at his Sabre Yachts job despite the presence of the hernia, which had first been diagnosed in October 2003.[34]

2.      The timing of Casey's claim was suspicious, occurring on the heels of an altercation with a co-worker that had resulted in Casey's having to take a leave of absence and in the wake of his statement to Harpell that he had "made the decision that he [did] not intend to go back to [Sabre Yachts] as he [found] it too stressful."  Defendant's Additional SMF ¶ 80; Plaintiff's Reply SMF ¶ 80. *See Leahy v. Raytheon Co.*, 315 F.3d 11, 19 (1st Cir. 2002) ("highly suspicious" timing of plaintiff's claim, filed almost six months after he was laid off, when his salary-continuation benefits were about to expire, was one of "telltales" on which insurer was entitled to rely in denying claim).

3.      Rather than indicating in his initial letter to Sabre Yachts that he believed Casey was disabled, Dr. MacGillivray only relayed Casey's subjective report he "did not think that he could continue to do the strenuous activity at his current job while his hernia persists."  Defendant's Additional SMF ¶ 38; Plaintiff's Reply SMF ¶ 38.

4.      Harpell told Dr. Reeder that Casey had not complained about his hernia – a statement that is borne out by Harpell's contemporaneous treatment notes.

5.      Beyond his conclusory statements that Casey was totally disabled, Dr. MacGillivray quantified his finding of disability only by way of stating that Casey was unable to do heavy lifting.

Casey argues that denial of his claim on this basis was arbitrary and capricious inasmuch as "[i]t is simply not enough for the defendant to base its denial on a disbelief of the evidence offered by the employee, without having some evidence to support the contrary conclusion it wishes to embrace."

---

[34] As discussed above, I have rebuffed Casey's attempt to offer in evidence for the first time on appeal to this court his sworn statement that his hernia suddenly enlarged in April 2005. Apart from this, Casey has denied that objective findings regarding his hernia were the same in April 2005 as in February 2004. *See* Defendant's Additional SMF ¶ 77; Plaintiff's Reply SMF ¶ 77. While it is true that Casey's hernia was noted to be "large" in an April 2005 CT-scan report but not in a February 2004 CT-scan report, the April 2005 report does not make clear that the hernia was comparatively larger than in February 2004. *See* Record at 137, 215.

Plaintiff's S/J Motion at [9].  To the extent Casey means to suggest that an insurer may not rely on the opinion of a non-examining physician reviewer but must instead obtain an independent medical examination of a claimant, he is wrong.  The First Circuit has made clear that, for ERISA purposes, an insurer need not defer to a treating physician's disability opinion or arrange for an independent medical examination in order for its denial of a claim to pass muster pursuant to the arbitrary-and-capricious standard of review.  *See, e.g., Leahy*, 315 F.3d at 18-21 (insurer's view that plaintiff remained able to perform job, despite opinion of at least some of his treating physicians that he was disabled, was not arbitrary or capricious when anchored in independent medical record reviews conducted by two physicians, each of whom found insufficient evidence to sustain a conclusion that the plaintiff was fully disabled and whose conclusions were buttressed by evidence of record).

As in *Leahy*, Fort Dearborn confronted a body of evidence from which one could draw contradictory inferences regarding whether a claimant was totally disabled.  Dr. MacGillivray twice stated that Casey was in fact so disabled; however, Casey had been working with what Fort Dearborn reasonably could have concluded, based on the evidence before it, was essentially the same hernia condition he had had since October 2003; Casey had not complained to Harpell about the hernia; the timing of the claim was suspicious; and Fort Dearborn's physician reviewer opined that Casey had not met his burden of proving total disability from his job.  In these circumstances, Fort Dearborn's resolution of doubts against Casey was neither arbitrary, capricious nor an abuse of discretion.  *See Leahy*, 315 F.3d at 18-19 ("The medical evidence is extensive, and it would serve no useful purpose to rehearse it here.  Disability, like beauty, is sometimes in the eye of the beholder.  This is such a case: we have scrutinized the record with care and conclude, without serious question, that it is capable of supporting competing inferences as to the extent of the plaintiff's ability to work.  That clash does not suffice to satisfy the plaintiff's burden.  We have held before, and today reaffirm, that

22

the mere existence of contradictory evidence does not render a plan fiduciary's determination arbitrary and capricious.  Indeed, when the medical evidence is sharply conflicted, the deference due to the plan administrator's determination may be especially great.") (citations omitted).

## V.  Conclusion

For the foregoing reasons, I recommend that the court **GRANT** Fort Dearborn's motion for summary judgment and **DENY** that of Casey.

### _NOTICE_

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of February, 2007.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge